# NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2022 CA 0804

## OAT TRUSTEE, LLC, SOLELY IN ITS CAPACITY AS TRUSTEE FOR GIROD TITLING TRUST

## VERSUS

## ELITE INVESTMENT GROUP, LLC, JASON ADAMS, AND WORLEY CLAIMS SERVICES, LLC

Judgment Rendered:  **FEB 0 9 2023**

\* \* \* \* \* \* \*

On Appeal from the
Twenty-First Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Trial Court No. 2020-0000447

The Honorable Jeffrey S. Johnson, Judge Presiding

\* \* \* \* \* \* \*

Robert G. Harvey, Sr.
Justin Asher Zitler
New Orleans, Louisiana

Attorneys for Defendants/Appellants,
Elite Investment Group, LLC,
Highland Ventures, LLC, and
Jason Adams

Brett P. Furr
Vincent V. Tumminello, III
John A. Milazzo, Jr.
T. Coulter McMahen
Baton Rouge, Louisiana

Attorneys for Plaintiff/Appellee,
Oat Trustee, LLC, solely in its capacity
as Trustee for Girod Titling Trust

\* \* \* \* \* \* \*

**BEFORE: WELCH, PENZATO, AND LANIER, JJ.**

**PENZATO, J.**

This appeal involves issues that arose after the alleged default on two promissory notes related to the sale of commercial property. Appellants, Elite Investment Group, LLC ("Elite"), Jason C. Adams ("Adams"), and Highland Ventures, LLC ("Highland Ventures") (collectively referred to as "the Adams parties"), seek review of a September 16, 2021 judgment sustaining a peremptory exception of res judicata in favor of OAT Trustee, LLC, in its capacity as Trustee for Girod Titling Trust ("OAT"), and dismissing the Adams parties' reconventional demands with prejudice. For the following reasons, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY[1]

### Background

In 2015, Adams, on behalf of Elite, and Michael A. Worley ("Worley"), on behalf of W Resources, Inc., LLC ("W Resources"), executed an agreement to purchase and sell a commercial site with improvements in Hammond, Louisiana ("the Hammond property"). The sale was conditioned upon a 15-year lease of the facility situated thereon to the existing tenant, Worley Claims Services, LLC ("WCS"), with an accelerating monthly rent payment. Elite, through its sole member, Adams, obtained a $5,100,000.00 loan amortized over fifteen years from First NBC Bank ("FNBC") to finance the purchase. As the new owner of the Hammond property, Elite executed a new 15-year lease ("the 2015 lease"), dated September 24, 2015, with WCS; Worley signed on behalf of WCS.

At the same time, Adams and Elite executed a promissory note ("the Elite note"), and Elite executed a mortgage, in favor of FNBC to secure the indebtedness related to Elite's purchase of the property. Elite also executed an assignment of leases and rents ("the ALR") in favor of FNBC as security for the Elite loan.

---

[1] These facts are taken in part from a prior appeal. See *OAT Trustee, LLC as Trustee for Girod Titling Trust v. Elite Investment Group, LLC*, 2021-1402 (La. App. 1 Cir. 7/29/22), 347 So. 3d 938.

2

Additionally, Highland Ventures, whose only member was Adams, executed a note ("the Highland note") and mortgage, in which it mortgaged certain immovable property located in East Baton Rouge ("the Highland property"), thereby agreeing to fulfill Elite's and Adams' obligations under the Elite note.

In April 2017, the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver for FNBC. In November 2017, the FDIC assigned the Elite and Highland notes and mortgages and the ALR to Girod LoanCo, LLC ("Girod LoanCo"). In January 2018, Girod LoanCo assigned the note and mortgage to Girod Titling Trust ("Girod").

In January 2018, before assigning the note and mortgage to Girod, Girod LoanCo exercised its right to receive rent directly pursuant to the ALR. WCS sent ten monthly rent payments to Girod LoanCo. By letter dated August 31, 2018, WCS, through its attorney of record, advised Girod LoanCo and Elite that it had not authorized the 2015 lease and would no longer pay rent for use of the Hammond property facility.

***Previous Lawsuit***

On July 15, 2019, the Adams parties filed suit against OAT,[2] Girod LoanCo, and Capital Crossing Service Company, LLC (collectively, the "Girod parties") in the Twenty-Fourth Judicial District Court in Jefferson Parish, Louisiana (the "Jefferson Parish lawsuit"). The Adams parties alleged that, while acting as receiver, the FDIC collected the rents from the lessee of the property used to secure the Elite loan, and applied the collected funds to a different loan, not owed by the Adams parties. The Adams parties further alleged that, after the Girod parties acquired the Elite loan and the Highland loan, the Girod parties continued to collect and control the rents, which the Adams parties contended were sufficient to service both the Elite loan and the Highland loan. According to the Adams parties, the Girod parties never

---

[2] Girod Titling Trust was incorrectly named as a defendant in the petition.

applied the funds to the principal of the loans, only to penalties and fees. The Adams parties alleged the Girod parties were liable for misuse, failure to pay, and conversion of funds owed the Adams parties; tortious interference by taking, controlling, and converting funds in a manner that did not afford the Adams parties the ability to conduct their business; unfair trade practices by taking, controlling, and converting funds owed the Adams parties and allocating the converted funds in a fraudulent manner; and intentional infliction of emotional distress by taking, controlling, and converting funds owed the Adams parties and misallocating the converted funds.

In response to the petition, the Girod parties filed exceptions of lack of subject matter jurisdiction and no cause of action. In connection with their exception of lack of subject matter jurisdiction, the Girod parties argued that the Adams parties' petition alleged that any misapplication of funds was done by the FDIC, that the Financial Institutions Reform, Recovery and Enforcement Act (the "FIRREA") established a mandatory administrative claims process for any claim arising from an alleged bad act by the FDIC in its capacity as the receiver for a failed financial institution, and that the Adams parties did not allege that they followed the claims procedures available under the FIRREA.

The Adams parties filed a first amended and supplemental petition for damages, alleging therein that they were not challenging the actions of the FDIC, nor basing any of their claims on any wrongdoing by the FDIC. The Adams parties requested an accounting of the rents collected by the Girod parties since December 2017, and restated their claims against the Girod parties. Following a hearing on the Girod parties' exceptions, the trial court granted the exceptions of lack of subject matter jurisdiction and no cause of action, and allowed the Adams parties leave to amend their petition.

The Adams parties filed a second amended and supplemented petition for damages and demand for accounting, in which they reiterated that they were not

4

challenging the actions of the FDIC nor basing any of their claims on any wrongdoing by the FDIC. The Adams parties alleged that in September 2017, the FDIC corrected the payment allocations and applied the amounts collected from the rents to the correct loans. They further alleged that the loans were brought current on September 25, 2017. The Adams parties alleged that after purchasing the loans from the FDIC on or about November 13, 2017, the Girod parties, in their own capacities, continued to collect and control the rents, never applied the funds to the principal of the loans, and only applied the funds to penalties and fees in a manner that benefitted the Girod parties. Thus, according to the Adams parties, the actions of the Girod parties were the basis of the litigation.

The Girod parties re-urged their exceptions of lack of subject matter jurisdiction and no cause of action. On October 21, 2020, following a hearing on the re-urged exceptions, the trial court signed a judgment granting the exception of lack of subject matter jurisdiction and dismissing the Adams parties' claims with prejudice, and denying the exception of no cause of action as moot.

### Current Lawsuit

On February 12, 2020, OAT filed the instant suit in the Twenty-First Judicial District Court in Tangipahoa Parish, Louisiana, against Elite and WCS, seeking a declaratory judgment and sequestration of "back rent" owed under the 2015 lease that had been deposited into the federal court registry in connection with litigation in federal court between Elite and WCS.[3] OAT alleged that the Elite note was past

---

[3] Elite also previously filed a complaint in federal court against WCS, on October 25, 2018, seeking to accelerate the rent due under the 2015 lease. *Elite Investment Group, LLC v. Worley Claims Services, LLC*, No. 18-9985 (E.D. La) (the "first federal suit"). WCS answered the suit and denied the existence of a valid lease. WCS moved to deposit funds into the court registry in the amount of the rent due under the 2015 lease at that time, which request was granted. On October 3, 2019, the suit was dismissed without prejudice for lack of subject matter jurisdiction. See *OAT Trustee, LLC as Trustee for Girod Titling Trust*, 347 So. 3d at 942.

In September 2019, shortly before the dismissal of the first federal suit, WCS filed a complaint in federal court against Elite, seeking a declaration that the 2015 lease was null and seeking damages for unjust enrichment. *Worley Claims Services, LLC v. Elite Investment Group, LLC*, Civ. A. No. 19-12626 ("the second federal suit"). Elite answered the suit and filed a counterclaim, again

5

due and in default, and that OAT, as current holder of the Elite note and pursuant to the ALR, had a security interest in all rents paid under the 2015 lease.

WCS filed a reconventional demand for a concursus, asserting that while it made no claims to the settlement funds, it had received competing claims to these funds. WCS prayed for the court to order the court registry to accept the full amount of the settlement funds ($2,000,000.00) and to render judgment declaring who was entitled to the funds. On October 8, 2020, the trial court signed an order directing the clerk of court to deposit the settlement funds into the court registry.[4]

OAT then amended its petition, adding Adams and Highland Ventures as defendants, and seeking judgment in its favor against Elite and Adams under the Elite note, judgment against Highland Ventures under the Highland note and as guarantor of the Elite note, judgment against Adams as guarantor of the Highland note, a declaration that the settlement funds were subject to the ALR and due and payable to OAT, and the sequestration of those funds. OAT asserted it had proceeded by executory process to seize and sell the 2015 lease, the Hammond property, and the Highland property; OAT sought to recover the remaining amounts due on each underlying note.

Elite and Adams answered OAT's amended petition, denying liability, raising affirmative defenses, and filing a petition for reconventional demand and declaratory judgment. Elite and Adams alleged that OAT was liable for misuse, failure to pay, and conversion of funds owed to Elite and Adams; tortious interference by taking,

---

seeking an acceleration of the rent owed under the 2015 lease. Upon WCS's motion, the funds deposited in the court registry in connection with the first federal suit were transferred to the second federal suit. On February 10, 2020, the second suit was resolved pursuant to a settlement. The settlement agreement provided that WCS would tender $2,000,000.00 ("the settlement funds") to Elite, and all claims in the second federal lawsuit would be dismissed. The settlement agreement confirmed that the $2,000,000.00 was inclusive of the money in the federal court registry, which at the time was $967,306.77. See *OAT Trustee, LLC as Trustee for Girod Titling Trust,* 347 So. 3d at 942.

[4] Pursuant to OAT's voluntary motion, the trial court signed an October 20, 2020 judgment that dismissed OAT's claims against WCS with prejudice.

6

controlling, and converting funds in a manner that did not afford Elite and Adams the ability to conduct their business; unfair trade practices by taking, controlling, and converting funds owed Elite and Adams and allocating the converted funds in a fraudulent manner; and intentional infliction of emotional distress by taking, controlling, and converting funds owed to Elite and Adams and misallocating the converted funds. Elite and Adams alleged the monthly rents collected from 2017 through 2018 were sufficient to service the Elite loan if applied to the principal and interest according to the Elite note, but OAT failed to properly apply the funds to the loan and imposed onerous fees and penalties. Further, Elite and Adams asserted that a "subsidiary or sister company" of OAT purchased the property at the sheriff's sale well below market value, "backhandedly control[ling] the deficiency amount allegedly owed by [Elite and Adams], resulting in unjust enrichment."[5] Elite and Adams maintained that the total sum of "rent" held in the federal court registry prior to settlement was only $967,306.77. Thus, in its reconventional demand, Elite sought a "declaratory judgment releasing [to it] ... [the remaining] $1,032,693.23" from the settlement funds held in the registry of the court.

Highland Ventures answered OAT's amended petition, adopting the "answers, affirmative defenses and positions" provided by Elite and Adams.

On March 19, 2021, OAT filed a peremptory exception of res judicata and a motion for summary judgment. In its exception of res judicata, OAT alleged that the claims set forth in the Adams parties' reconventional demand were dismissed, with prejudice, by the October 21, 2020 judgment in the Jefferson Parish lawsuit, and sought dismissal of the Adams parties' reconventional demand. In its motion for summary judgment, OAT sought a declaration that the $2,000,000.00 in the court registry was "rent" from the Hammond property and, therefore, was due to OAT as

---

[5] OAT set forth in its amending petition that the 2015 lease and the Hammond Property were adjudicated to Girod REO, LLC for $1,821,667.00.

7

security for the Elite note under the terms of the ALR. Further, OAT prayed for a deficiency judgment against the Adams parties with respect to both the Elite and Highland notes.

On May 27, 2021, the trial court signed a partial final judgment sustaining OAT's peremptory exception of res judicata and granting the Adams parties fifteen days to amend their reconventional demand. The judgment also granted OAT's motion for summary judgment in part, finding OAT was entitled to a declaratory judgment that the $2,000,000.00 in the court registry was rent and was due and immediately payable to OAT. The judgment "deferred" that portion of OAT's motion for summary judgment seeking a deficiency judgment, pending the Adams parties' amended reconventional demand. The Adams parties appealed the May 27, 2021 judgment. This court dismissed the appeal for lack of jurisdiction. *OAT Trustee, LLC as Trustee for Girod Titling Trust v. Elite Investment Group, LLC*, 2021-1402 (La. App. 1 Cir. 7/29/22), 347 So. 3d 938.

In accordance with the May 27, 2021 judgment, on June 7, 2021, the Adams parties filed an amended and supplemental answer, affirmative defenses, reconventional demand, and third party demands ("amended pleading").[6] OAT was made a defendant-in-reconvention "as subrogee" to FNBC, Elite's lender in connection with the 2015 purchase of the Hammond property. According to the Adams parties' amended pleading, FNBC owed Elite a fiduciary duty "to verify the *bona fides* of Mr. Worley's capacity to act on behalf of WCS," and breached that duty. The Adams parties sought a "nullity declared *ab initio* on all closing documents executed by Elite on Sept. 24, 2015 [and] on the closing documents executed by Highland Ventures LLC on April 29, 2016."

---

[6] The record indicates that the amended pleading was filed on June 7, 2021. However, the parties and the trial court refer to the amended pleading as being filed on May 26, 2021.

8

In response to the Adams parties' amended pleading, OAT filed peremptory exceptions of no cause of action, res judicata, and prescription. In its exception of no cause of action, OAT argued that under Louisiana law, banks shall not be deemed or implied to have fiduciary responsibilities toward customers or third parties unless expressly set forth in a written agency or trust agreement. La. R.S. 6:1124. Because the Adams parties did not allege the existence of a written contract, OAT contended their fiduciary duty claim failed as a matter of law. In its exception of res judicata, OAT alleged that even though the Adams parties changed their theory of recovery to one based in fraud, the 2015 lease and loan documents, which were the subject of the Jefferson Parish lawsuit, remained at the center of the current lawsuit. Thus, OAT contended the claims were barred by res judicata. Finally, OAT noted that in the Adams parties' amended pleading, they admitted that on August 31, 2018, they were informed by counsel for WCS that an internal investigation uncovered that Worley lacked capacity to execute the 2015 lease on behalf of WCS. Thus, OAT argued that the Adams parties' tort claim for breach of fiduciary duty was prescribed.

The Adams parties filed an opposition to the exceptions of res judicata and prescription. With regard to the exception of res judicata, the Adams parties contended that the exception was improper because the trial court was divested of jurisdiction as a result of the Adams parties' appeal of the May 27, 2021 judgment. The Adams parties further argued that to the extent the exception of res judicata was directed towards the amended pleading, the exception was legally insufficient because OAT "failed to identify any particularly numbered paragraph which allegedly violates the re-litigation policy." With regard to the exception of prescription, the Adams parties asserted that their breach of fiduciary duty based in tort may have prescribed, but could be used as a defense to OAT's petition for a deficiency judgment. The Adams parties' opposition did not address OAT's exception of no cause of action.

9

On August 23, 2021, the trial court heard OAT's exceptions, as well as exceptions brought by other defendants. In connection with its exception of res judicata, OAT filed and introduced into evidence the pleadings filed in the Jefferson Parish lawsuit and the October 21, 2020 judgment granting the Girod parties' exception of lack of subject matter jurisdiction and dismissing the Adams parties' claims. On September 16, 2021, the trial court signed a judgment ordering extensive relief. Relevant hereto, the September 16, 2021 judgment sustained OAT's exception of res judicata to the amended pleading and dismissed the Adams parties' reconventional demands against OAT with prejudice, rendering moot OAT's exception of prescription. The September 16, 2021 judgment further indicated that OAT's exception of no cause of action was withdrawn at its request.

The Adams parties filed a timely motion for new trial on the grant of OAT's exception of res judicata.[7] On February 17, 2022, the trial court signed a judgment denying the motion for new trial. The Adams parties then filed a writ application, which challenged the trial court's denial of its motion for new trial as to the granting of the exception of res judicata. This court granted the writ, in part, for the limited purpose of remanding the case to the trial court with instructions to grant the Adams parties a devolutive appeal pursuant to the pleading that notified the trial court of their intention to seek writs. This court recognized that the portion of the trial court's September 16, 2021 judgment that sustained OAT's exception of res judicata and dismissed the Adams parties' reconventional demands against OAT with prejudice was a final appealable judgment. This court further stated that it considered the Adams parties' request for review of the denial of their motion for new trial as an appeal of the judgment on the merits because it was clear the Adams parties intended

---

[7] There is some confusion as to the date of filing. However, pursuant to Proclamation Number 170 JBE 2021 dated September 6, 2021, due to the impact of Hurricane Ida, "[l]egal deadlines applicable to legal proceedings in all courts ... [were] hereby suspended until September 24, 2021." Thus, the motion for new trial was timely.

to appeal the merits of the case. *OAT Trustee, LLC as Trustee for Girod Titling Trust v. Elite Investment Group LLC*, 2022-0299 (La. App. 1 Cir. 6/21/22), 2022 WL 2230867.[8]

## ASSIGNMENT OF ERROR

On appeal, the Adams parties contend that the trial court erred by sustaining an exception of res judicata based on a prior suit in Jefferson Parish, where their amended pleading sought nullity, rescission, and dissolution of a commercial lease and sale affecting immovable property located in Tangipahoa Parish.

---

[8] The record reflects that the trial court signed three subsequent judgments in connection with its disposition of OAT's exception of res judicata, two on September 29, 2021, and one on November 16, 2021.

The original judgment, signed September 16, 2021, ordered extensive relief in addition to sustaining OAT's exception of res judicata and dismissing the Adams parties' reconventional demands against OAT. One of the judgments signed on September 29, 2021, was identical to the judgment signed on September 16, 2021. This subsequent duplicate judgment was superfluous and unnecessary and, therefore, invalid. See *Noyel v. City of St. Gabriel*, 2015-1890 (La. App. 1 Cir. 9/1/16), 202 So. 3d 1139, 1142, writ denied, 2016-1745 (La. 11/29/16), 213 So. 3d 392.

The second judgment signed on September 29, 2021 and the November 16, 2021 judgment sustained OAT's exception of res judicata and dismissed the Adams parties' reconventional demands against OAT, but did not contain all of the relief provided in the original September 16, 2021 judgment. The November 16, 2021 judgment further contained language indicating that the parties had previously submitted competing judgments, one of which was inadvertently signed by the trial court, and that said judgment was vacated and superseded by the November 16, 2021 judgment. Thus, these judgments substantively altered the September 16, 2021 judgment.

A judgment may be amended by the court where the resulting judgment takes nothing from or adds nothing to the original judgment. *In re Succession of Cannata*, 2014-1546 (La. App. 1 Cir. 7/10/15), 180 So. 3d 355, 371, writ denied, 2015-1686 (La. 10/30/15), 180 So. 3d 303. However, an amendment to a judgment which adds to, subtracts from, or in any way affects the substance of the judgment, is considered a substantive amendment. *Suprun v. Louisiana Farm Bureau Mut. Ins. Co.*, 2009-1555 (La. App. 1 Cir. 4/30/10), 40 So. 3d 261, 268. Substantive amendments to judgments can be made only by consent of the parties or after a party has successfully litigated a timely application for new trial, an action for nullity, or a timely appeal. *Benoit v. Benoit*, 2021-0864 (La. App. 1 Cir. 4/4/22), 341 So. 3d 719, 730, writ not considered, 2022-00951 (La. 10/4/22), 347 So. 3d 890. Otherwise, a trial court lacks authority to make any modifications of substance to a final judgment. *Id.*

The record does not reflect a motion for new trial, action for nullity, or an appeal by the parties seeking to substantively amend either the second September 29, 2021 judgment or the November 16, 2021 judgment. Nothing in the language of the second September 29, 2021 judgment reflects it was amended pursuant to a motion for new trial on the trial court's own motion. The signing of the November 16, 2021 judgment, vacating and superseding the prior judgment, was outside the delay for granting a new trial. Thus, we find both the second September 29, 2021 judgment and the November 16, 2021 judgment are invalid amended judgments.

## LAW AND DISCUSSION

Res judicata bars relitigation of a subject matter arising from the same transaction or occurrence of a previous suit. *Avenue Plaza, L.L.C. v. Falgoust*, 96-0173 (La. 7/2/96), 676 So. 2d 1077, 1079; see also La. R.S. 13:4231. Louisiana Revised Statutes 13:4231 defines the doctrine of res judicata as follows:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Under La. R.S. 13:4231, all of the following elements must be satisfied in order for res judicata to preclude a second action: (1) the first judgment is valid; (2) the first judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. *Burguieres v. Pollingue*, 2002-1385 (La. 2/25/03), 843 So. 2d 1049, 1053; *Matherne v. TWH Holdings, L.L.C.*, 2012-1878 (La. App. 1 Cir. 12/6/13), 136 So. 3d 854, 860, writ denied, 2014-0854 (La. 6/20/14), 141 So. 3d 810.

The party raising the objection of res judicata bears the burden of proving the essential facts to support the objection. *State ex rel. Guilbeau v. BEPCO, L.P.*, 2020-0429 (La. App. 1 Cir. 9/20/21), 341 So. 3d 1, 8. The doctrine of res judicata is not

12

discretionary and mandates that final judgments be given effect. *Id.* If any doubt exists as to its application, the objection of res judicata must be overruled and the second lawsuit maintained. *Wicker v. Louisiana Farm Bureau Casualty Insurance Company*, 2018-0225 (La. App. 1 Cir. 9/21/18), 257 So. 3d 817, 821. The concept should be rejected when doubt exists as to whether a plaintiff's substantive rights actually have been previously addressed and finally resolved. *Id.* at 822. The res judicata effect of a prior judgment is a question of law that is reviewed *de novo.* *Pierrotti v. Johnson*, 2011-1317 (La. App. 1 Cir. 3/19/12), 91 So. 3d 1056, 1063.

Applying these principles to the matter before us, we address the first requirement of the statute, *i.e.*, that the first judgment is valid. To have any preclusive effect, a judgment must be valid; that is, among other things, it must have been rendered by a court with jurisdiction over the subject matter. La. R.S. 13:4231, comment (d); *Kelty v. Brumfield*, 93-1142 (La. 2/25/94), 633 So. 2d 1210, 1215. A claim is not barred by res judicata if the court in which the first action was brought lacked subject matter jurisdiction to adjudicate that claim. *Id.*

In the Jefferson Parish lawsuit, the Girod parties successfully argued that the FIRREA established a mandatory administrative claims process for the Adams parties' claims. The trial court rendered judgment on October 21, 2020, granting the Girod parties' exception of lack of subject matter jurisdiction. Accordingly, because the Adams parties' claims in the Jefferson Parish lawsuit were subject to the mandatory administrative claims process established by the FIRREA, and therefore not subject to the jurisdiction of the Twenty-Fourth Judicial District Court, the October 21, 2020 judgment has no res judicata or preclusive effect, and cannot serve as the basis for the objection of res judicata raised herein. See *Kelty*, 633 So. 2d at 1219. Accordingly, the portion of the trial court's September 16, 2021 judgment sustaining OAT's exception of res judicata and dismissing the Adams parties'

13

reconventional demands against OAT is reversed.[9]

## CONCLUSION

For the foregoing reasons, we reverse that portion of the September 16, 2021 judgment that sustained a peremptory exception of res judicata in favor of OAT Trustee, LLC, in its capacity as Trustee for Girod Titling Trust, and dismissed, with prejudice, the reconventional demands of Elite Investment Group, LLC, Jason C. Adams, and Highland Ventures, LLC, and remand this matter to the trial court for further proceedings. All costs of this appeal are assessed to OAT Trustee, LLC, in its capacity as Trustee for Girod Titling Trust.

**REVERSED AND REMANDED.**

---

[9] Although OAT did not appeal or answer the appeal, in its brief, it argues that this court should sustain its peremptory exception of no cause of action. We note that the September 16, 2021 judgment indicates that OAT's peremptory exception of no cause of action was withdrawn at its request. While an appellate court may raise the peremptory exception of no cause of action *sua sponte*, we decline to do so here, finding it more appropriate to remand this matter for further proceedings and allow the trial court to consider OAT's arguments should they be reasserted. See *Jackson v. City of Zachary*, 2017-1583 (La. App. 1 Cir. 8/6/18), 256 So. 3d 323, 329.